UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PATRICIA A CARTER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:15-cv-01595-SEB-TAB ) |
| CAROLYN W. COLVIN Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff Patricia A. Carter appeals the Administrative Law Judge's denial of her Social Security applications for disability insurance benefits and supplemental security income. Carter argues the ALJ: (1) failed to properly address SSR 96-7p in assessing Carter's subjective symptoms, (2) erroneously concluded Carter's depression is not a severe impairment, and (3) failed to explain the evidentiary basis for determining Carter's non-exertional limitations. For the reasons below, the Magistrate Judge recommends that Carter's brief in support of appeal [Filing No. 12] be denied and the Commissioner's decision be affirmed.[1]

### II. Background

Carter applied for disability insurance benefits and supplemental security income alleging disability beginning July 28, 2010. The claims were denied initially and upon reconsideration.

---

[1] Carter did not file a reply brief when presented with the opportunity. As a result, the Commissioner raised arguments that Carter left unaddressed.

On February 25, 2014, Carter testified at a hearing before the ALJ. On April 15, 2014, the ALJ issued her decision finding Carter not disabled. [Filing No. 9-2, at ECF p. 22.]

At step one, the ALJ found that Carter had not engaged in substantial gainful activity during the relevant time period. [Filing No. 9-2, at ECF p. 24.] At step two, the ALJ found Carter's severe impairments included mild lumbar spine stenosis, cervical spine spondylosis, and obesity. [*Id.*] At step three, the ALJ found that Carter did not meet or equal any relevant listing. [Filing No. 9-2, at ECF p. 29.]

At step four, the ALJ found Carter has the RFC to perform light work with the following limitations: Carter could climb ramps, stairs, ladders, ropes, and scaffolds only occasionally. Carter could balance frequently; however, Carter could stoop, kneel, crouch, and crawl only occasionally. [Filing No. 9-2, at ECF p. 30.] Relying on a Vocational Expert's testimony, the ALJ found Carter was capable of performing her past relevant work as an administrative assistant, a medical clerk, and a manager of food services. Therefore, the ALJ did not proceed to step five and concluded Carter was not disabled because she could perform her past relevant work as it is actually and generally performed. [Filing No. 9-2, at ECF pp. 33-34.] This decision became final when the Appeals Council denied Carter's request for review. This appeal followed.

### III. Standard of Review

The Court must uphold the ALJ's decision if substantial evidence supports her findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). The ALJ is obliged to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding

2

of nondisability while ignoring evidence that points to a disability finding.  *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected.  *Moore,* 743 F.3d at 1123.  The ALJ, however, need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion.  *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

## IV. Discussion

### A. Subjective Symptoms and Credibility

Carter argues that the ALJ erred by failing to articulate her application of SSR 96-7p in assessing Carter's symptoms.  SSR 96-7p is used to clarify when the evaluation of symptoms under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptoms. This rule requires the ALJ to consider the objective medical evidence, the individual's subjective complaints, and seven factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes; (5) treatment, other than medication, the individual receives; (6) any measure other than treatment the individual uses to relieve symptoms; and (7) any other factors concerning the individual's functional limitations due to pain or other symptoms.  SSR 96-7p, 1996 WL 374186, at *3.  The ALJ is not required to specify which statements are not credible.  *Shideler v. Astrue*, 688 F.3d 308, 312 (7th Cir. 2012).  Carter contends that the ALJ failed to identify which of Carter's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible and to what degree they were not credible.  [Filing No. 12, at ECF p. 12.]  Carter's argument fails.

The record contradicts Carter's argument that "there is no discussion of any element of the factors of SSR 96-7p." [Filing No. 12 at, ECF p. 13.]  The ALJ articulated numerous reasons to support her conclusion that Carter's claimed symptoms and limitations were not fully credible. The ALJ discussed the location, duration, and intensity of Carter's pain, noting Carter's own testimony describing severe limitations due to intense pain.  This discussion included Carter's claims that she can only walk for ten minutes or half a block before experiencing pain in her lower back and neck and could only stand for about two minutes.  [Filing No. 9-2, at ECF p. 31.] The ALJ also considered testimony from Carter and her sister that Carter experiences four to five crying spells per day and is very depressed.  [*Id*.]  The ALJ reviewed the type, effectiveness, and side effects of Carter's medications, stating that the medications include Valium, Suboxone, Cymbalta, Trazodone, and Remeron; The ALJ noted that the Suboxone leaves Carter with a hollow feeling in her head, but emphasized that Carter did not allege any other persistent side effects associated with her medication [*Id*.]

The ALJ also discussed Carter's other treatment, noting that Carter had not received or enrolled in any mental health programs following her detoxification.  [Filing No. 9-2, at ECF p. 32.]  The ALJ noted that Carter participated in physical therapy, which reportedly only made her pain worse, and underwent back surgery in February 2013, in addition to having another appointment scheduled for a surgical evaluation.  [Filing No. 9-2 at, ECF pp. 31.]  The ALJ also discussed other measures taken by Carter to relieve pain, such as the use of a heated vibrator and brace for her back, and discussed Carter's daily activities.  [*Id.*]

Carter argues that the ALJ did not accurately recount her activities of daily living and cites her own testimony as a more accurate portrayal. [Filing No. 12, at ECF p. 15.]  However, the ALJ did discuss Carter's daily activities, pointing out, for example, that Carter attends to her

personal needs, manages medications, and provides care for her father along with other activities. After the analysis, the ALJ noted that Carter's daily activities showed she is more functional than she alleged at the hearing. [Filing No. 9-2, at ECF p. 33.] SSR 96-7p itself requires the ALJ to make a comparison between Carter's documented activities versus her testified activities. SSR 96-7p, 1996 WL 374186, at *5.

The ALJ went into detail about inconsistencies between Carter's testimony and the evidence of record, even though the ALJ need not state credibility assessments explicitly or particularize them to specific testimony. *Shideler v. Astrue*, 688 F.3d 308, 312 (7th Cir. 2012) (e.g. *Melton v. Colvin*, No. 1:13-CV-01712-SEB, 2015 WL 1279966, at *2 (S.D. Ind. Mar. 20, 2015)). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5. Inconsistencies between Carter's testimony and the record provided a valid reason for the ALJ to determine that Carter's testimony lacked credibility. *Patterson v. Colvin*, No. 1:14-cv-00468-SEB-MJD, 2015 U.S. Dist. LEXIS 26305, at *32 (S.D. Ind. Feb. 12, 2015). For example, Carter claimed that she did not file a worker's compensation claim following a 2006 foot injury, yet she underwent a worker's compensation evaluation in August 2006. [Filing No. 9-2, at EFC p. 32.] Carter also claimed that she had not driven in two years, yet function reports show that she was driving as late as October 2012. [Filing No. 9-6, at ECF p 54.]

Carter also contends that the ALJ committed reversible error by using "meaningless boilerplate" language regarding credibility. The ALJ held "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." [Filing No. 9-2, at ECF p. 31.] To support this argument, Carter cites to *Parker v. Astrue* 597 F.3d 920, 921-22 (7th Cir. 2010), in which the Seventh

Circuit found the phrase "not entirely credible" to be unhelpful in credibility determinations. However, the Seventh Circuit has held "the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin* 712 F.3d 351, 367-68 (7th Cir. 2013) (citations omitted). Unlike *Parker*, the ALJ adequately explained her credibility determination. Therefore, the ALJ's use of boilerplate language does not undermine the validity of her determination.

The ALJ reasonably addressed the 96-7p factors and found that Carter's subjective complaints of pain were not fully credible. The Seventh Circuit has afforded much deference to the credibility determinations made by ALJs. *See Bates v. Colvin*, 763 F.3d 1093, 1098 (7th Cir. 2013) ("An ALJ's credibility determination is entitled to deference, and we will overturn a credibility finding only if it is patently wrong") (internal quotation omitted). The ALJ's credibility determination is not patently wrong. Thus, the ALJ's application of SSR 96-7p was not erroneous.

### B.      Depression Severity

Carter argues that the ALJ erred at step two by determining Carter's depression was non-severe. Carter claims that the five-step analysis was cut short and that remand is necessary to fully consider the evidence of Carter's depression. [Filing No. 12, at ECF p. 17.] Carter asserts that substantial evidence does not support the ALJ's conclusion that Carter's depression had only a minimal impact on her walking, standing, and other basic work functions. Carter argues the ALJ ignored and discredited critical evidence and relied instead on her own layperson opinion. However, Carter's argument is flawed.

The ALJ thoroughly discussed Carter's mental health history and struggles with depression. The ALJ discussed Carter's testimony that she had been depressed since her son's death in 2008 and had crying spells four to five times per day. [Filing No. 9-2, at ECF p. 28.] The ALJ noted Carter's claim that depression had taken over her life, and that she spends most of her time in her room. The ALJ acknowledged that Carter underwent a six-day, in-patient treatment at Valle Vista in 2010 to detoxify from opiates and benzodiazepines. [*Id.*] The ALJ also acknowledged that Carter was diagnosed with benzodiazepine and opiate dependence, depression, and post-traumatic stress disorder upon discharge from Valle Vista. [Filing No. 9-2, at ECF p. 27.] The ALJ noted Carter's testimony that she neither participated in the recommended individual counseling which followed her release nor enrolled in any mental treatment programs. [*Id.*] The ALJ also detailed Carter's subsequent medical records which revealed a fairly normal mental status. An October 2012 emergency room visit showed Carter's mood and affect were normal [Filing No. 9-7 at, ECF p. 76], and the state-agency reviewing psychologists opined that Carter's mental impairments were non-severe. [*Id.* at ECF pp. 58-71.]

The ALJ gave a thorough analysis of the relevant mental health evidence, contrary to Carter's argument. The ALJ was not required to discuss every single piece of evidence and built a logical bridge from the evidence to her conclusions. The ALJ reasonably found, based on the evidence, that Carter had mild to no limitations in her functional areas. Thus, the ALJ properly found that Carter's mental impairments were non-severe.

Carter also argues that the amount of weight placed on the examination by Dr. Young, the consultative examiner, was not discussed. Carter claims that the ALJ is responsible for evaluating all medical opinions and determining the weight to give each one. Carter cites to SSR 96-5p, which states that opinions from any medical source must never be ignored and the

decision must explain the consideration given to the opinion. However, the ALJ thoroughly discussed Dr. Young's examination, observations, and diagnoses. The ALJ did not explicitly state whether she found Dr. Young persuasive or assign her a weight. While this failure to assign weight was an error, it was harmless because even if significant weight were assigned to Dr. Young's report on remand, it would not alter the ALJ's ultimate conclusion that Carter's depression was not severe. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (finding if an ALJ fails to explain the weight given to a physician's opinion, the error is harmless when remand would reach the same result). Dr. Young gave Carter no work limitations in her evaluation, nor did Dr. Young assess Carter's limitations regarding activities of daily living, social functioning, concentration, persistence, or pace. [Filing No. 9-7, at ECF pp. 44-8.] In fact, Dr. Young observed that Carter was logical, sequential, had no bizarre thoughts or behaviors, and was not homicidal or suicidal. This lends credence to the ALJ's conclusion that Carter's depression was non-severe. Thus, even though ALJ erred by failing to assign Dr. Young weight, that error is harmless in the context of other evidence.

Carter also briefly argues the ALJ should have summoned a medical expert to assist in evaluating Carter's mental impairments. To support this argument Carter cites to *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2010), which held that if the ALJ lacks sufficient evidence to make a decision, she must develop the record and obtain expert opinions if necessary. However, Carter does not point to or allege what a medical expert might find. The Commissioner points out that "[m]ere conjecture . . . that additional evidence might have been obtained . . . is insufficient to warrant remand." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). The ALJ gave a thorough analysis of the relevant mental health evidence which supports her findings. Carter was able to manage her symptoms with the use of medication. No medical source opinion

found Carter's depression to be severe or identified any restrictions on Carter's ability to perform work-based activities due to depression. Substantial evidence exists without a medical expert's opinion to support the ALJ's finding that Carter's depression was non-severe. Thus, it was not error for the ALJ to not summon a medical expert.

### C.   Non-exertional limitations

Carter argues that the ALJ erred in her RFC analysis because she failed to sufficiently explain the rationale behind the non-exertional limitations in the RFC finding. Carter claims that the ALJ failed to consider the combined effects of Carter's impairments and failed to include Carter's mental limitations due to depression. In support of her argument, Carter likens this case to *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000), where the court found remand necessary "[b]ecause the record [did] not indicate that the ALJ properly considered the aggregate effect of all [claimant]'s ailments." In *Clifford*, the ALJ did not take into account the claimant's obesity when assessing the RFC despite the record containing multiple references to obesity. [*Id.*] Here, unlike in *Clifford*, the ALJ thoroughly considered the cumulative effects of all of Carter's impairments, including depression, and concluded that no additional mental limitations were required in the RFC

The ALJ did not ignore evidence of Carter's mental limitations or omit mental limitations from the RFC. The ALJ extensively considered Carter's anxiety and depression before concluding that these impairments did not warrant further limitations in her RFC. The ALJ noted that Carter's medications have adequately controlled the symptoms of Carter's depression. [Filing No. 9-2, at ECF p. 28, 32.] The ALJ also noted that Carter was not enrolled in a mental health treatment program and that Carter's consultative psychological exam showed only minor, if any, clinical signs of a severe mental impairment. [Filing No. 9-

2 at, ECF p. 32.] The ALJ gave great weight to the opinions of both state-agency psychologists who opined that Carter did not have a severe mental impairment or combination of impairments. [*Id.* at, ECF p. 33.] However, they both opined that Carter had mild difficulties in activities of daily living; maintaining social functioning; maintaining concentration, persistence, or pace; and had no episodes of decompensation. [Filing No. 9-7 at, ECF pp. 68, 84.] Accordingly, Carter's analogy to *Clifford* is unconvincing.

The ALJ also sufficiently supported her findings on Carter's physical conditions. The ALJ found Carter's severe impairments were mild lumbar spine stenosis, cervical spine spondylosis, and obesity. [Filing No. 9-2 at, ECF p. 24.] However, despite these impairments, Carter's condition improved following her February 2013 lumbar fusion. [*Id.* at ECF p. 31.] The ALJ noted that during a follow-up examination in April 2013 Carter had a normal gait and motor strength in her upper and lower extremities. [*Id.*] The ALJ emphasized that no medical records indicated a relapse or incomplete recovery. [*Id.* at ECF p. 31.] The ALJ mentioned that Carter had normal motor strength, normal grip strength, manual dexterity, and normal ranges of motion (except for neck, hips, and back). [*Id.*] The ALJ took into account Carter's obesity and the state-agency medical consultants' opinions that Carter is limited to light work, which the ALJ incorporated into her RFC determination. [*Id*. at ECF pp. 30, 33.] The ALJ sufficiently explained her non-exertional findings.

The ALJ properly considered the cumulative effects of Carter's depression and other impairments in the RFC. As the Commissioner notes, no medical source suggested any specific limitations from Carter's depression at any time during the relevant period, and Carter fails to identify any evidence that shows her depression impacted her ability to work. [Filing

No. 15 at, ECF p. 20.]    Substantial evidence supports the ALJ's determination that no mental limitations were warranted.  Thus, the ALJ sufficiently explained her RFC finding.

### V.  Conclusion

Because the ALJ's findings are supported by substantial evidence, the ALJ's decision should be affirmed.  The Magistrate Judge recommends that Carter's brief in support of appeal [Filing No. 12] be denied.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date:  7/29/2016

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov